**Charles WALDER et al., Plaintiffs,**

v.

**PARAMOUNT PUBLIX CORPORATION et al., Defendants.**

United States District Court
S. D. New York.

June 24, 1955.

914

Henry Pearlman, New York City, Philip Handelman, New York City, of counsel, for plaintiffs.

E. Compton Timberlake, New York City, of counsel, for all defendants.

Louis Phillips, New York City, for defendants Paramount Pictures, Inc. (in

dissolution), Paramount Pictures Corp., Paramount Film Distributing Corp.

J. Miller Walker, New York City, for defendant RKO Radio Pictures, Inc.

Robert W. Perkins, New York City, for defendant Warner Bros. Pictures Distributing Corp.

Herbert B. Lazarus, New York City, for defendant American Broadcasting-Paramount Theatres, Inc. (formerly named as referred to in complaint as United Paramount Theatres, Inc.)

Dwight, Royall, Harris, Koegel & Caskey, New York City, for defendant Twentieth Century-Fox Film Corp., a New York corporation (in dissolution).

Schwartz & Frohlich, New York City, for defendant Columbia Pictures Corp.

WEINFELD, District Judge.

This is an action for treble damages and injunctive relief for alleged violations of the anti-trust laws, 15 U.S.C.A. § 1 et seq. The defendants move for summary judgment on a number of grounds.

The action was brought by: (1) Charles, Ethel, Alvin and Lester Walder, individually; and (2) as trustees of Tivoli Theatre, Inc., dissolved (referred to herein as Tivoli); (3) Charles and Ethel Walder as trustees of Tivoli Operating Corporation, dissolved (referred to herein as Operating); (4) Tivoli Amusement Company, Inc. (referred to herein as Amusement); (5) The Walwal Corporation (referred to herein as Walwal). The four individual plaintiffs were the sole stockholders, officers and directors of Tivoli, Walwal and Amusement, and Charles and Ethel Walder were members of the last board of directors of Operating.

The action centers about the Tivoli Theatre, a motion picture house in Miami, Florida which at various times from 1928 to date was owned or operated by one or another of the corporate plaintiffs.

In 1928 Tivoli, a Florida corporation, became the owner and operator of the Tivoli Theatre. In 1931 it transferred the fee to Walwal but continued to operate the theatre as lessee until 1937. Operating was organized in 1936 and in 1937 became the lessee of the theatre and continued to operate it until 1947. Since 1947 the theatre has been operated by Amusement as lessee. This action was commenced September 4, 1951.

In substance the plaintiffs claim that from 1928 to date the defendants, who are motion picture distributors, conspired among themselves and with Paramount Enterprises, Inc., an exhibitor operating in Miami, to prevent the Tivoli Theatre from exhibiting pictures on a "first run" and from obtaining subsequent runs on a competitive basis; that this conspiratorial action coerced the individual plaintiffs into agreeing to the formation of Operating, in which Paramount Enterprises, Inc. received a 50% stock interest, and the plaintiff Walwal the other 50%; further that in 1937 Walwal as owner and Tivoli as lessee or operator of the Tivoli Theatre, and the individual plaintiffs as stockholders of the two corporations, were coerced into substituting Operating as lessee in place and stead of Tivoli; that plaintiffs were further coerced into surrendering to several of the co-conspirators over half the proceeds of the theatre during the period when Operating was the lessee. The complaint incorporates by reference the decrees entered against the defendants [1] in United States v. Paramount Pictures, Inc.[2]

1. Except the defendants Paramount Pictures Corporation and American Broadcasting-Paramount (sued here, as United Paramount) who were not parties to the government suit.

2. D.C., 66 F.Supp. 323; Id., D.C., 70 F. Supp. 53; Id., 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; Id., D.C., 85 F.Supp. 881. These decrees are pleaded under § 5 of the Clayton Act, 15 U.S.C.A. § 16. See Emich Motors Corp. v. General Motors, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534.

The defendants' motion, which seeks summary judgment or, in the alternative, partial summary judgment in favor of some of the defendants against all of the plaintiffs, is based on various distinct grounds, each directed against one or more plaintiffs.

First, it is urged that the individual plaintiffs have no standing to sue. The plea must be upheld. The individual plaintiffs neither owned nor operated the Tivoli Theatre. They were stockholders in Walwal and Tivoli which either owned or operated the theatre until 1937, when Operating took over. The plaintiffs concede that as such stockholders they cannot maintain an action for treble damages for an injury sustained by the corporation but they contend they sustained individual damages to their business or property by reason of the defendants' conduct separate and distinct from the damages caused to the corporation. They claim first that the defendants' actions forced them to cause Walwal to replace Tivoli as the lessee of the theatre with Operating, in which defendant Paramount Enterprises acquired half the stock—thus in effect requiring them to surrender 50% of the leasehold. Second, they claim they were deprived of the opportunity to earn management fees or other income as individuals which, but for the defendants' control of Operating would have been available to them. No breach of any contract of employment is alleged.

 Patently the first claim is based on the alleged impairment of plaintiffs' stock in either Walwal or Tivoli and the second claim is clearly based upon alleged deprivation of salary anticipated as an incident of their relationship to the corporation. Neither of these claims may be pressed for "a stockholder cannot recover for the impairment of his stock by combination in restraint of trade; a creditor cannot recover for impairment of the corporate debtor's ability to pay an indebtedness in an action against a third party for treble damages for violation of the Anti-Trust laws, and finally, neither loss of corporate office and salary incident thereto, nor injuries to a corporate officer's general creditor are injuries to his business or property within the meaning and intent of the Anti-Trust laws." [3] Finally, if as plaintiff contends Operating is entitled to recover the 50% stock interest held by Paramount Enterprises, as well as any dividends received thereunder, the individual plaintiffs as the sole stockholders of Walwal would in any event be made whole.

This branch of the motion is granted.

Second, the defendants seek summary judgment against Walwal and Charles and Ethel Walder as individuals based upon a general release executed by them August 17, 1948, in favor of Paramount Enterprises, Inc. They contend that since Paramount Enterprises is named as a co-conspirator the release, which contained no reservation of rights, also operated to release all other joint tort feasors named as defendants herein with respect to all claims which accrued on or before August 17, 1948.

 There are general clauses in the release sufficiently broad to bar the plaintiffs' present claims. However, the first "whereas" clause suggests a narrower scope. It states that the parties have had dealings and transactions relating to the "Tivoli Theatre and its equipment" and that disputes have arisen "with reference thereto and otherwise". The defendants, in addition to the general clauses rely on the words "and otherwise", but the "whereas" clause read as a whole appears to imply a more limited scope than that for which they

**3.** Westmoreland Asbestos Co., Inc., v. Johns-Manville Corp., D.C.S.D.N.Y., 30 F.Supp. 389, .391, affirmed on opinion below 2 Cir., 113 F.2d 114; Conference of Studio Unions v. Loew's, Inc., 9 Cir., 193 F.2d 51, 54, certiorari denied, 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687; Karseal Corporation v. Richfield Oil Corporation, 9 Cir., 221 F.2d 358, 363; Gerli v. Silk Ass'n of America, D.C.S.D.N.Y., 36 F.2d 959; Corey v. Boston Ice Co., D. Mass., D.C., 207 F. 465.

contend.[4] Whether the release was limited to the claims relating to equipment and repairs or was sufficiently broad to encompass all claims arising out of the operation of the theatre including antitrust violations, is not altogether clear from the face of the document. In view of this ambiguity the intention of the parties becomes relevant.[5] Thus a substantial issue of fact exists which requires the denial of the motion for summary judgment.[6]

The defendants next urge that the causes of action asserted on behalf of Tivoli and Operating have wholly abated because suit was not brought within three years of their dissolution as required by the Florida statute. Tivoli was dissolved more than 14 years prior to the commencement of suit and Operating was dissolved in 1948, the exact date being in dispute. The actions are brought on behalf of the corporations by the individuals constituting the last board of directors "as trustees".

 At common law, the dissolution of a corporation is analogous to the death of an individual. All pending actions are abated and no further actions can be brought by or against the corporation. However, a dissolution statute may artificially continue the existence of the corporation for the stated period to permit it to prosecute or continue suits either in its own name or in the name of trustees.

 The conditions of corporate dissolution are "not procedural or controlled by the rules of the court in which the litigation pends",[7] rather they are matters which rest wholly with the State of incorporation, and over which the Federal Government has no control.[8] Consequently, if a corporation lacks capacity to sue by reason of dissolution under State law, it cannot sue in the Federal courts even on a federally created right.[9] Nor can the pendency of United States v. Paramount Pictures affect the dissolution provisions of Florida law under section 5 of the Clayton Act, 15 U.S.C.A. § 16, tolling statutes of limitation during the pendency of government antitrust actions. Once the statutory period has expired the corporation, absent special saving provisions, is defunct for all

4. Cf. Vines v. General Outdoor Advertising Co., 2 Cir., 171 F.2d 487, 492; Murphy v. City of New York, 190 N.Y. 413, 415, 83 N.E. 39. The defendants insist that this being a Florida release, its effect is governed by Florida law, and cite numerous cases in which the release of one joint tort feasor was held to release all. However, the defendants overlook the fact that in these cases there was no question but that the release covered the claim under consideration and also that under the Florida decisions parol evidence is admissible to show the intent of the parties where ambiguity exists on the face of the contract. Milton v. Burton, 79 Fla. 266, 84 So. 147; Jackson v. Parker, 153 Fla. 622, 15 So.2d 451, 459. The question here is not one of varying the terms of the release, but of determining what claims were encompassed by it.

5. Both parties draw support for their respective positions from the correspondence leading up to the execution of the release.

6. Defendants' reliance on Combined Bronx v. Warner Bros., D.C.S.D.N.Y., 132 F. Supp. 921, is misplaced. It is clear from Judge Ryan's opinion that he upheld the release against a claim of duress because the uncontroverted evidence showed that the parties had negotiated at arms length through competent counsel.

7. Oklahoma Natural Gas Co. v. State of Oklahoma, 273 U.S. 257, 260, 47 S.Ct. 391, 392, 71 L.Ed. 634.

8. Ibid; The Greyhound, 2 Cir., 68 F.2d 832; Sedgwick v. Beasley, 84 U.S.App. D.C. 325, 173 F.2d 918; United States v. Safeway Stores, 10 Cir., 140 F.2d 834; Rule 17(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

9. "How long and upon what terms a state-created corporation may continue to exist is a matter exclusively of state power." Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 127, 58 S.Ct. 125, 128, 82 L.Ed. 147; Hopkins Federal Savings & Loan Ass'n v. Cleary, 296 U.S. 315, 337, 56 S.Ct. 235, 80 L.Ed. 251; Seaboard Terminals Corporation v. Standard Oil Co., D.C.S.D.N.Y., 35 F. Supp. 566.

**918**

purposes and the corporation or trustees may not thereafter maintain suit. And the fact that the statutory period of grace is less than the remaining period of any statute of limitations applicable to a chose of action existing in favor of the corporation does not matter. The corporation by its voluntary action has curtailed its own existence and an incident of its action is the contraction of the period within which to bring suit.[10]

■ The fundamental difference between the parties is whether after dissolution a three year period, as defendants contend, or a twenty year period as plaintiffs urge, governs. In any event, with regard to Operating, an issue of fact defeats the motion for defendants claim that dissolution occurred on August 17, 1948 while plaintiffs insist that it did not take place until October 12, 1948, within three years of the filing of this suit. On the other hand, it is undisputed that Tivoli had dissolved on August 7, 1937.

The defendants rely upon F.S.A. § 612.47 which provides that dissolved corporations shall be continued for three years for the purpose of prosecuting and defending suits by or against them and to enable them to wind up corporate affairs. It contains no reference to any actions by trustees of the corporation. The plaintiffs urge that § 612.47 is inapplicable since they bring the action as trustees under §§ 612.48 and 612.49 which provide that upon dissolution of the corporation its directors shall be the trustees thereof with power to settle and wind up its affairs and in their names as trustees to sue and be sued; that neither § 612.48 nor § 612.49 contains any reference to § 612.47 with its three year provision or to any other period of limi-

tation. Accordingly they contend that the general limitation provision found in § 610.37 which for some purposes extends the term of the trustees to twenty years, is controlling.

■ In my view, the various sections of the Florida dissolution statute were intended to be read as an integrated whole, and not, as plaintiff contends, a series of unrelated sections.[11] Section 612.47 suspends for limited purposes, and for a three year period, the otherwise automatic incidents of corporate death. The sections that follow[12] merely prescribe the form and details of the corporation's continued but limited existence. Thus §§ 612.48 and 612.49 which, among other matters, provide for substitution of the trustees as parties in place of the dissolved corporation, vest in those trustees powers almost identical with those of the corporation under § 612.47. It would, therefore, hardly seem logical to apply an entirely different period in which the powers are exercised by the trustees acting in the name of the corporation as distinguished from the corporation acting in its own name.

Moreover, § 610.37 does not support plaintiff's contention. By its own terms, the section is limited to matters involving real property which the corporation holds of record in the State of Florida. Further, as to these matters, it supplements § 612.48 by extending the time during which the trustees may act to twenty years—strongly supporting the view that the powers granted under § 612.48 are limited to a lesser period.

Finally, with but one exception[13] the decisions of both the Florida Supreme Court and the Federal courts offer strong, if not conclusive, support to the position that "when a corporation is dis-

---

10. See International Pulp Equip. Co. v. St. Regis Kraft Co., D.C.D.Del., 54 F. Supp. 745; Charles A. Zahn Co. v. United States, 6 F.Supp. 317, 79 Ct.Cl. 215; Kieckhefer v. United States, 4 F. Supp. 1013, 80 Ct.Cl. 71; A. J. Bates Co. v. United States, 3 F.Supp. 245, 77 Ct.Cl. 611.

11. McClung v. Hill, 5 Cir., 96 F.2d 236, 238; see also Gerstel v. William Curry's Sons Co., 157 Fla. 216, 25 So.2d 560, 562.

12. Fla.Stats. of 1941, §§ 612.48–612.64, F.S.A.

13. Courson v. Paramount, S.D.Fla.1950, Civ. No. 3446–M.

solved its directors become trustees for a term of three years in order to settle its affairs and prosecute and defend suits in its name." [14] Accordingly the motion is granted as to Tivoli.

Next the defendants take the position that all the plaintiffs' claims are barred in varying degrees as to each defendant by the statute of limitations. The limitation period not having been specified by Congress, the appropriate period is determined by the law of the forum.[15] However, New York borrows the limitation period of the "state or country where the cause of action arose". [16] It is beyond question that this cause of action arose in Florida and that Florida's three year statute of limitations [17] is applicable.[18]

The defendants concede that during the pendency of the Paramount case the Florida statute was tolled.[19] However, by applying the lapsed time from the termination of the Government's suit against each defendant [20] until the filing of this action, and deducting such period from the three year limitation, a remainder is arrived at. Applying this remainder to the period prior to the commencement of the Government's suit a cut-off date is reached for each defendant barring all damages prior thereto.[21]

Plaintiffs do not dispute the defendants' calculations but to overcome the cut-off dates urge that the limitation period was further tolled on the ground the defendants were absent from the State.[22] The defendants, on the other hand, concede they did not file certificates of qualification prior and subsequent to the Government's suit,[23] but assert they were transacting business in Florida throughout the entire period here involved "within the meaning of the venue provisions of 15 U.S.C.A. § 22". The plaintiff disputes this and, in the reverse of the usual situation, contends the defendant had insufficient contacts in the State to have been deemed present for the purposes of suit. Here is a disputed issue of fact and a substantial one.

While the moving affidavits contain little evidence of probative value the defendants rely upon certain allegations in the complaint to the effect they were engaged in the distribution of motion pictures in the State of Florida. But these allegations do not state at what time or to what extent the defendants were so engaged, and in several in-

14. Sunshine v. Golden Arms Apartments Corp., Fla., 47 So.2d 1, 2; Gerstel v. William Curry's Sons Co., 157 Fla. 216, 25 So.2d 560, 562; Howell Turpentine Co. v. Commissioner, 5 Cir., 162 F.2d 319, 324; McClung v. Hill, 5 Cir., 96 F.2d 236, 238. See also Neville v. Lemington Hotel Corporation, Fla., 47 So.2d 8; State v. Barker, 141 So.2d 321; Howe v. Robinson, 20 Fla. 352.

15. Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 191 F.2d 912.

16. New York Civil Practice Act, § 13.

17. Fla.Stats. of 1941, § 95.11(5), F.S.A.

18. Crummer Co. v. DuPont, D.C.N.D.Fla., 117 F.Supp. 870; Seaboard Terminals Corporation v. Standard Oil Co., D.C. S.D.N.Y., 24 F.Supp. 1018, affirmed 2 Cir., 104 F.2d 659; Momand v. Universal Film Exchange, D.C.D.Mass., 43 F.Supp. 996, 1008. Cf. Cope v. Anderson, 331 U.S. 461, 466, 67 S.Ct. 1340, 91 L.Ed. 1602.

19. Except the defendants Paramount Pictures Corporation and American Broadcasting-Paramount (sued here as United Paramount) who were not parties to the Government suit. These defendants contend that claims against them arising more than three years prior to the institution of this action are barred.

20. The Paramount case was terminated at different times against different defendants.

21. Cf. Leonia Amusement Corp. v. Loew's, Inc., D.C.S.D.N.Y., 117 F.Supp. 747.

22. Fla.Stats. of 1941, § 95.07, F.S.A., provides for tolling of the statute when a defendant is absent from the jurisdiction.

23. However the defendant Paramount Film Distributing Corporation does contend it was qualified to do business in Florida since 1923 but even this is in dispute.

stances they allege that the business was conducted by the defendants or their subsidiaries. Such allegations are insufficient to support the conclusion that the defendants were present for purposes of suit.[24]

■ As to the defendant Paramount Distributing Corporation, the complaint asserts that at all times mentioned, it was engaged in the distribution branch of the motion picture industry in the State of Florida, and plaintiffs' affidavit in opposition to the motion assays no explanation of this allegation. Still, I am of the view that the failure of the affidavit to touch on this point does not of itself entitle the defendant to summary judgment.[25] In any event upon the papers before me it does not appear that there is no genuine issue of fact on this subject.

In view of the sharp factual dispute this branch of the defendants' motion must be denied.

■ As their fifth ground, defendants urge that the complaint fails to state a claim in behalf of Operating and Amusement upon which relief can be granted. As to the latter corporation the contention is without merit, for the complaint clearly alleges that the conspiracy charged is a continuing one, having its impact on this plaintiff. Should the proof support the allegation, Amusement would be entitled to injunctive relief.

Likewise, with respect to Operating, a cause of action appears to have been stated. It is true that the complaint admits that Operating was able to obtain desirable runs on a competitive basis,

after it had issued 50% of its stock to the defendant Paramount, and as a consequence the conspiracy in this regard had no further impact upon it. But there is no suggestion that Operating was not adversely affected by the other illegal acts complained of in paragraph sixty-five of the complaint, or any of them. Moreover, the gravamen of the complaint, insofar as Operating is concerned, appears to be that by reason of the conspiracy it was coerced into surrendering half of its stock and a larger share of its profits to one or more of the defendants. These allegations are sufficient to state a claim upon which relief can be granted.

■ One final matter remains. The defendants Paramount Pictures Corporation and American Broadcasting-Paramount urge that the complaint must be dismissed as to them since they were not formed until 1949, and cannot be held for acts committed before they came into existence. This contention overlooks the fact that these defendants are charged with having joined a conspiracy continuing from 1928 to the filing of the complaint. Under well established principles of conspiracy law, they may be held as fully liable as the original or earlier participants in the conspiracy.

The motion made by these defendants must be denied.

The motion for summary judgment is granted as to the plaintiffs Charles, Ethel, Alvin and Lester Walder, individually and as trustees of Tivoli Theatre, Inc., dissolved. In all other respects it is denied.

Settle order in accordance with the foregoing.

---

24. The parties have not considered and for present purposes it is not necessary to decide whether State law or Federal law, 15 U.S.C.A. § 22, governs on the issue of whether the defendants were "transacting business" in Florida. Cf. Hoskins Coal & Dock Corp. v. Truax Traer Coal Co., 7 Cir., 191 F.2d 912.

25. See, Subin v. Goldsmith, 2 Cir., 224 F. 2d 753.