**Charles WALDER et al., Plaintiffs,**

v.

**PARAMOUNT PUBLIX CORPORATION et al., Defendants.**

United States District Court
S. D. New York.

Oct. 1, 1957.

3. H.Rept. No. 766, 81st Cong., 1st Sess., (1949).

See also, 135 F.Supp. 228.

———◆———

Claudia Pearlman, New York City, Edgar A. Buttle, New York City, of counsel, for plaintiffs.

Louis Phillips, New York City, for Paramount Pictures Inc. (In Dissolution), Paramount Pictures Corp., Paramount Film Distributing Corp.

J. Miller Walker, New York City, for RKO Radio Pictures, Inc.

Robert W. Perkins, New York City, for Warner Bros. Pictures Distributing Corp.

Herbert B. Lazarus, New York City, for American Broadcasting-Paramount Theatres, Inc.

Dwight, Royall, Harris, Koegel & Caskey, New York City, for Twentieth Century-Fox Film Corp. (In Dissolution).

Schwartz & Frohlich, New York City, for Columbia Pictures Corp.

E. Compton Timberlake, New York City, of counsel, for all defendants.

DAWSON, District Judge.

This is a motion by the defendants for a summary judgment dismissing so much of this action as is brought on behalf of Tivoli Operating Corporation, on the ground that any claims asserted on behalf of Tivoli Operating Corporation are barred either by the Florida, F.S.A. § 95.11(5), or New York, Civil Practice Act, § 49(3), statute of limitations.

The action is one for treble damages and injunctive relief for alleged violations of the anti-trust laws in connection with the distribution and allotment of films for exhibition at the Tivoli Theatre in Miama, Florida.

For an analysis of the parties to the action and the contentions of the various parties reference should be made to the opinion of Judge Weinfeld reported in D.C.S.D.N.Y.1955, 132 F.Supp. 912. That opinion was rendered upon a motion for summary judgment made by the defendants in this action. So far as the action involves claims on behalf of the Tivoli Operating Corporation Judge Weinfeld said:

"Likewise, with respect to Operating, a cause of action appears to have been stated. It is true that the complaint admits that Operating was able to obtain desirable runs on a competitive basis, after it had issued 50% of its stock to the defendant Paramount, and as a consequence the conspiracy in this regard had no further impact upon it. But there is no suggestion that Operating was not adversely affected by the other illegal acts complained of in paragraph sixty-five of the complaint, or any of them. Moreover, the gravamen of the complaint, insofar as Operating is concerned, appears to be that by reason of the conspiracy it was coerced into surrendering half of its stock and a larger share of its profits to one or more

of the defendants. These allegations are sufficient to state a claim upon which relief can be granted." 132 F.Supp. at page 920.

Now the defendants urge that even if the allegations of Tivoli Operating Corporation do state claims upon which relief may be granted the claims are barred by the statute of limitations. The bases of this contention are (1) that all the claims asserted on behalf of Tivoli Operating Corporation accrued prior to September 4, 1945, and (2) that the running of the statute of limitations is not tolled by the pendency of the Paramount case. United States v. Paramount Pictures, Inc., D.C.S.D.N.Y.1946, 66 F.Supp. 323; Id., D.C.S.D.N.Y.1946, 70 F.Supp. 53, reversed and remanded in part, 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; Id., D.C.S.D.N.Y.1949, 85 F.Supp. 881, affirmed Loew's, Inc., v. U. S., 1950, 339 U.S. 974, 70 S.Ct. 1031, 94 L.Ed. 1380.

It appears that this action has heretofore been referred to Judge Leibell for pre-trial pursuant to Rule 16 of the Rules of Civil Procedure, 28 U.S.C.A. One purpose of a pre-trial is to simplify the issues. This motion should have been brought on before Judge Leibell, but it appears that counsel for plaintiff refused to have the matter referred to him. So we have a situation where the issues in the case have been exhaustively studied by Judge Weinfeld (on motions brought on before him) and then by Judge Leibell (in pre-trial proceedings) and thereafter this motion is brought on before a third judge, perhaps in the hope that he will reach conclusions different from those judges who have previously considered the matter. If any such hope exists it will be vain, for I will consider the determinations previously made to state the law of the case which I should follow.

On the question as to whether all the claims asserted by the plaintiffs accrued prior to September 4, 1945, I would point out that Judge Weinfeld has previously held that "there is no suggestion that Operating was not adversely affected by the other illegal acts complained of in paragraph sixty-five of the complaint, or any of them." There is no indication that all these acts occurred prior to September 4, 1945; in fact, quite the contrary would appear from the complaint.

Furthermore, § 5 of the Clayton Act, 15 U.S.C.A. § 16, provides for the running of the statute of limitations in private actions for triple damages during the pendency of an anti-trust case when the action is based "in whole or in part" on "any matter" complained of in the Government's anti-trust suit. The defendants properly state in their brief (p. 24): "The precise question presented here is whether Tivoli Operating Corporation's actual claim is based in whole or in part on any matter complained of by the Government in the Paramount case"; and they further contend, "Moreover, the words 'complained of' cannot be considered in a vacuum but only in the light of the actual complaint made by Tivoli Operating Corporation and the actual matters complained of by the Government in the Paramount case."

Defendants urge that the only claims asserted by Operating relate to dividends and management fees. Plaintiffs deny that these are the only issues, and the language of Judge Weinfeld, previously quoted, would indicate that he found the issues to be not so limited. The complaint claims in paragraph eighty-five that the injuries suffered by the plaintiffs covered a period from January 1, 1937 to May 24, 1947. Whether these claims can be sustained at the trial is not now before this Court. If issues of fact are presented these issues must be determined at the trial.

The defendants also urge that the matters complained of by Tivoli Operating Corporation are not based in whole or in part on any matter complained of in the Paramount case. Whether this is true or not must depend upon what matters are complained of by Tivoli. Certainly the acts complained of in paragraph sixty-five were specifically based on the complaint in United States v. Paramount Pictures, Inc., and paragraph sixty-six of the complaint states that the same illegal prac-

tices are complained of in the instant action.

Judge Weinfeld has heretofore said, in his previous opinion in this case:

"In substance the plaintiffs claim that from 1928 to date the defendants, who are motion picture distributors, conspired among themselves and with Paramount Enterprises, Inc., an exhibitor operating in Miami, to prevent the Tivoli Theatre from exhibiting pictures on a 'first run' and from obtaining subsequent runs on a competitive basis; that this conspiratorial action coerced the individual plaintiffs into agreeing to the formation of Operating, in which Paramount Enterprises, Inc. received a 50% stock interest, and the plaintiff Walwal the other 50%; further that in 1937 Walwal as owner and Tivoli as lessee or operator of the Tivoli Theatre, and the individual plaintiffs as stockholders of the two corporations, were coerced into substituting Operating as lessee in place and stead of Tivoli; that plaintiffs were further coerced into surrendering to several of the co-conspirators over half the proceeds of the theatre during the period when Operating was the lessee. The complaint incorporates by reference the decrees entered against the defendants in United States v. Paramount Pictures, Inc." 132 F.Supp. at page 915.

This analysis of the case would indicate that the action involves matters based in whole or in part on matters complained of by the Government in the Paramount case; and under such circumstances the running of the statute of limitations was tolled during the pendency of that case and therefore there is no basis for granting the motion for summary judgment.

This is the type of action where formal pre-trial proceedings for the simplification of the issues would be eminently desirable. The complaint is a hodgepodge of accusations. How many of the accusations constitute issues which will have to be tried and how many are inserted merely for atmosphere cannot be decided on the face of the pleading. Any attempt to secure a limitation of issues by motions addressed to the complaint would seem to be regarded with disfavor in some circles.* However, formal pre-trial proceedings can do much to achieve a proper resolution of the issues in dispute. See "The Lost Horizon in Pleading under the Federal Rules of Civil Procedure," by Hon. James Alger Fee, 48 Colum.L. Rev. 491 (1948). We must recognize, however, that even this procedural device will break down if one side is given the opportunity, as it was in the instant action, to bring the pre-trial proceedings to a halt by refusing to continue before a particular judge.

It may be that if pre-trial proceedings had continued in this action and an order been entered as to the specific issues in dispute, the issues of law raised by the instant motion would then have been susceptible of determination and the time consumed by the trial court in trying the issues would have been appreciably shortened. However, this has not been done and on the present state of the record there would be no basis for granting defendants' motion for summary judgment.

Motion denied. So ordered.

---

* See "Special Pleading in the 'Big Case'" by Hon. Charles E. Clark—Paper Prepared for the Seminar on Protracted Cases held at New York University, August 26–30, 1957.

"Occasionally there is a direction to prune off surplusage, a theoretically sound point of view since these complaints, far from being models, are usually singularly verbose and full of unnecessary conclusions, cliches and counts.

* * * But is there time in the Southern District for such pruning and perfectionism when the easier course is just to treat such excesses with silent disdain?"

It may be suggested that it is just this unwillingness to require an early definition of the real issues that results in "little cases" becoming "big cases" from the standpoint of judicial time consumed, and helps to create the "protracted case."