In the Matter of the Application of S. M. & J. EISENSTADT, INC., to Compel HORACE HEFFERNAN, an Attorney and Counselor at Law, to Account to It for All Moneys Received and Collected by the Said HORACE HEFFERNAN, as Attorney for the Said S. M. & J. EISENSTADT, INC., in an Action Entitled, S. M. & J. EISENSTADT, INC., Plaintiff, v. FRANK E. SWEENEY, Defendant. HORACE HEFFERNAN, Appellant; S. M. & J. EISENSTADT, INC., Petitioner, Respondent.

First Department, March 17, 1939.

*William E. Seward* of counsel [*Horace Heffernan* with him on the brief], for the appellant.

*David I. Michaelson*, for the respondent.

UNTERMYER, J. The petitioner, S. M. & J. Eisenstadt, Inc., a corporation dissolved in 1935 by proclamation of the Secretary of State, retained the appellant Heffernan, an attorney, to collect a judgment which the corporation had recovered in 1928 against one Frank E. Sweeney in the Supreme Court of New York county. Heffernan succeeded in recovering $600 on the judgment, which was paid to him by Sweeney on May 27, 1938, under an escrow agreement of that date to the effect that it should not be released until a satisfaction of the judgment was delivered. If a satisfaction of the judgment was not delivered, the sum deposited was to be repaid to Sweeney after deducting any compensation that might be allowed to Heffernan by a court of competent jurisdiction. A controversy arose between the client and the attorney concerning the amount of the attorney's compensation, resulting in a proceeding in the Supreme Court of New York county instituted by S. M. &

J. Eisenstadt, Inc., which was dismissed on September 9, 1938, without prejudice to the institution of a new proceeding, on the ground that it was not sufficiently alleged that it was authorized by the former directors of the corporation. There followed a new proceeding in the Supreme Court, Fulton county, begun by Heffernan on September 14, 1938, under section 475 of the Judiciary Law, in which he requested that the amount of his attorney's lien be determined and another proceeding in the Supreme Court, New York county, instituted by S. M. & J. Eisenstadt, Inc., on September 17, 1938, in which it demanded that the compensation of the attorney be determined and also that the balance of the sum of $600 remaining be paid to the petitioner and another attorney, David I. Michaelson.

In the proceeding in the Supreme Court of New York county, Heffernan raised no issue of fact but interposed the defense that the satisfaction of judgment delivered by S. M. & J. Eisenstadt, Inc., was insufficient, apparently because executed in the name of the corporation, by its president, rather than by trustees in liquidation. He also contended that the pendency of the proceeding in Fulton county precluded the maintenance of the proceeding in New York county between the same parties and, as he contended, for the same cause. The proceeding in New York county resulted in a decision on September 29, 1938, published in the New York Law Journal on the following day (N. Y. L. J. Sept. 30, 1938, p. 902), which, after allowing Heffernan the sum of $150 compensation for his services, directed that he turn over the balance of $450 to the petitioner and Michaelson. The order on that decision, however, was not entered until October 5, 1938. In the meantime the proceeding in Fulton county had resulted in an order, dated October 3, 1938, fixing the petitioner's compensation at $298.53, but containing no provision for the payment over to S. M. & J. Eisenstadt, Inc., of any balance, for in that proceeding no such relief had been demanded. It would appear that that court, in making its order of October 3, 1938, was not aware of the decision of the Supreme Court of New York county which had been published in the New York Law Journal three days previously. In consequence of these two proceedings there is now outstanding an order of the Supreme Court, Fulton county, dated October 3, 1938, fixing the lien of the attorney at $298.53 and an order of the Supreme Court, New York county, dated October 5, 1938, from which the attorney appeals, fixing his compensation at $150 and further directing payment to the petitioner and Michaelson of $450. The attorney having failed to comply with the order of the Supreme Court of New York county, a motion

was made to punish him for contempt of court, which resulted in an order, dated November 18, 1938, granting the motion, from which Heffernan also appeals. There is also an order of the Supreme Court, Fulton county, fixing the lien of another attorney, Gordon P. Young, at $135.75, which, however, need not be considered here.

In our opinion the appellant's contention that the pendency of the proceeding in Fulton county precluded the maintenance of the proceeding in New York county must be overruled. The proceedings were identical only to the extent that both demanded that the attorney's compensation be determined. They differed in that the Fulton county proceeding would not have adjudicated who was entitled to the fund after the attorney's lien was satisfied. That was precisely the purpose of the proceeding in New York county, in which it was demanded that the fund be turned over by the attorney to the petitioner subject to the payment of his claim for compensation. The difference in the two proceedings becomes especially important when it is remembered that Heffernan was contending that the petitioner's failure to deliver a proper satisfaction of judgment required payment of the balance of the fund to Sweeney under the escrow agreement of May 27, 1938, while the petitioner was contending that the satisfaction was sufficient and entitled it to the balance of the fund. It cannot, therefore, be said that the two proceedings, though between the same parties, were " for the same cause." (*Avery* v. *Title Guarantee & Trust Co.*, 230 App. Div. 519.)

If it were necessary to hold that the order of the Supreme Court, New York county, dated October 5, 1938, allowing the attorney the sum of $150 for his services remains effective in direct contradiction to the order of the Supreme Court, Fulton county, dated October 3, 1938, allowing him $298.53 for the same services, it is probable that neither order would be entitled to prevail (*Shaw* v. *Broadbent*, 129 N. Y. 114), and the question of the amount of the attorney's compensation would be open for determination in a new proceeding. We are, however, of opinion that for other reasons the order of October 5, 1938, should be reversed.

The action is not maintained by trustees in liquidation, but in the corporate name, upon the theory that section 29 of the General Corporation Law (as amd. by Laws of 1937, chap. 597) applies. The provisions of that section, stated in general terms, allow a corporation, though dissolved, to sue or be sued in its corporate name and likewise in its corporate name to wind up its affairs through agents appointed for that purpose. It is conceded, however, that the corporation S. M. & J. Eisenstadt, Inc., was dissolved in 1935 by proclamation of the Secretary of State under section

203-a of the Tax Law, on account of non-payment of franchise taxes. Subdivision 10 of section 203-a (as amd. by Laws of 1937, chap. 623) contains provisions concerning corporations so dissolved which seem to be in conflict with section 29 of the General Corporation Law. Even if section 29 may be said not to be in direct conflict with subdivision 10 of section 203-a in that the proceedings contemplated by subdivision 10 are also authorized by section 29, it would inevitably follow that all the provisions of subdivision 10 are rendered meaningless and nugatory.

The problem thus presented is whether section 29, which includes a dissolution " for any cause and whether voluntary or involuntary," applies to a corporation dissolved under section 203-a of the Tax Law, for which special provision has been made. The Appellate Term of this Department, in *Seventy-three First Avenue Corp., Inc.,* v. *Braunstein Bros. Carbonic Sales Corp.* (168 Misc. 842; affd., 170 id. 657), has held that section 29 of the General Corporation Law does not apply to such a case. We are inclined to the same opinion for the reason that the inclusion of such dissolved corporations under section 29 would necessarily involve the repeal by implication of subdivision 10 of section 203-a of the Tax Law. Such a repeal might be assumed were it not for the circumstance that said subdivision 10 was amended by chapter 623 of the Laws of 1937, which became effective on May 25, 1937, the same day that an amendment to section 29 of the General Corporation Law, by chapter 597 of the Laws of 1937, also took effect. It is incredible that the Legislature intended the repeal of subdivision 10 of section 203-a of the Tax Law by section 29 of the General Corporation Law, when amendments to both statutes were enacted to take effect simultaneously. It is rather to be assumed that subdivision 10 of section 203-a of the Tax Law was intended to operate as an exception to the general provisions of section 29. In this respect the present case is distinguishable from *Sinnott* v. *Hanan* (214 N. Y. 454), where the court construed two statutes of New Jersey, one of which provided that, after non-payment for two years of any tax, " the charter of such corporation shall be void " and that " all powers conferred by law upon such corporation are hereby declared inoperative and void " upon proclamation by the Governor; the other of which provided that " all corporations, whether they expire by their own limitation or be annulled by the Legislature or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them." It was held that the latter statute should be interpreted as an exception to the general provisions of the former, thereby allowing actions to be maintained

in the corporate name even against corporations which have been dissolved for non-payment of taxes. But it will be observed that in that case the statute which provided for the dissolution of the corporation contained no provisions concerning the maintenance of specific actions against the corporation inconsistent with the statute authorizing action of any kind to be maintained after dissolution in the corporate name. If any analogy may be drawn from that decision it is that a statute dealing with a special situation should prevail over conflicting provisions which are general in character.

In the present case it would seem to have been the purpose of the Legislature to deny to corporations dissolved for non-payment of franchise taxes the right to litigate in the courts of the State in the corporate name, except to the limited extent specified in subdivision 10 of section 203-a of the Tax Law, and to relegate them, it may be, in the winding up of their affairs, including the collection of their debts and the payment of claims against the corporation, to the method expressly provided for such corporations by section 106 of the Stock Corporation Law. This conclusion is confirmed by section 6 of the General Corporation Law which subordinates the provisions of the General Corporation Law to other conflicting corporate statutes.

We conclude, therefore, that the proceeding in its present form cannot be maintained and that, accordingly, the order of the Supreme Court, New York county, dated October 5, 1938, should be reversed, which also requires reversal of the order, dated November 18, 1938, finding the appellant to be guilty of contempt of court.

The order of the Supreme Court, New York county, dated October 5, 1938, and entered October 7, 1938, and the order entered November 18, 1938, should be reversed, with twenty dollars costs and disbursements, and the motions denied.

MARTIN, P. J., TOWNLEY, GLENNON and COHN, JJ., concur.

Orders unanimously reversed, with twenty dollars costs and disbursements, and motions denied.