STATE OF CONNECTICUT *v.* ANONYMOUS (1974–5)*

SUPERIOR COURT

* Opinions on preliminary motions in criminal cases are thus entitled, in view of General Statutes § 54-90.

SADEN, J. This motion was denied from the bench, the court indicating then that it would file a memorandum within a reasonable period of time. There is not the slightest reason why the court should disqualify itself in any matter relating to this case because there is not the slightest doubt the court is not in any manner prejudiced toward the defendant, whom it does not know, nor toward his counsel.

This motion, however, supplies sufficient reason for the court to consider the general question of good faith pleadings or good faith representations by counsel to the court in the course of a trial in the context in part of this case and cases generally, because the motion charges that the court "threatened" defense counsel with disciplinary action if he failed to prove any factual allegation. The motion also indulges in other lurid, grossly exaggerated, melodramatic, and unjustifiable language that the court has "prejudged" the case and has an "overwhelming prejudice" against the defendant and his counsel. The use of such language cannot be justified where the court cautions counsel to abide by the rules of pleading laid down for all counsel in all cases, viz., "good faith" pleading. A judge's view of the law which he expresses, or a judge's assertion indicating a belief in upholding the law, even if stated with vehemence, is no "bias" at all and does not warrant recusation. See *Foster* v. *Medina*, 170 F.2d 632, cert. denied, 335 U.S. 909.

Good faith pleading requires that counsel must not allege claims of fact which he has no reasonable grounds to assert and cannot prove. Of course,

merely because a fact alleged is not ultimately proved to the court's satisfaction is not, standing alone, the test of good faith, because in every case many facts ultimately are not proved. The failure to prove the alleged fact is an important factor, but it must be judged in the light of all the circumstances existing at the time the pleading is filed or the oral representation is made to the court. If under all such circumstances counsel then has reasonable grounds to file the pleading or make the representation, he cannot later be faulted for his failure to satisfy his burden of proof. But, on the other hand, if the pleading or oral representation when made is without any reasonable basis and is designed merely to embarrass or to inject immaterial or irrelevant matters into the case for the sake of publicity or some other ill-conceived or improper motives, such a pleading or oral representation would clearly be subject to disciplinary action.

In civil cases Practice Book § 73 provides a monetary penalty payment to the opposing side for allegations made without reasonable cause and found to be untrue. This, of course, is impossible in criminal cases. The Canons of Professional Ethics also have a definite bearing on the limits to which counsel may wander in his presentation of his client's position. See Canons 15, 20, and 22. Written statements submitted to the court can constitute contempt of court just as much as audible statements made in its presence. But statements phrased in a proper manner and "honestly and reasonably believed to be true by the draftsman" are not contempt of court. See *Whiteside* v. *State,* 148 Conn. 77, 81.

The case of *Goodhart* v. *State,* 84 Conn. 60, in 1911 laid down the rule on oral representations made by counsel to the court. There the plaintiff was

found in contempt of court and fined. He was a New Haven attorney representing a defendant in a criminal case on a charge of assault with intent to murder. The plaintiff called a certain physician as a witness and represented to the court that he sought to establish his client's insanity through the physician's testimony. The testimony would be otherwise inadmissible, but upon defense counsel's representation, after much questioning by the court, that this was his purpose, the court allowed counsel to proceed. Counsel then delved into an entire colloquy between the defendant and the physician. The court fined counsel for contempt for introducing this evidence in violation of his promise to the court. The court pointed out that counsel had not asked any question that carried out his promise. The Supreme Court pointed out that the real question in the case was one of motive, intent, and good faith, and that the final answer must rest largely on the impressions of the trial court, which, if honestly entertained, must stand except in all but extreme and clear cases. The Supreme Court remarked that counsel's motive for eliciting this colloquy at a probable cause hearing was more probably to learn what his client had said as to the facts of the assault and events leading up to it. The "shifty statements" made by counsel as to the purpose for which he offered the testimony "are facts warranting inferences as to the sincerity of his ultimate statement, that it was offered to prove insanity." Id., 68. Therefore, the trial court was justified in finding that counsel had made an untruthful statement to secure the admission of evidence.

During the course of the instant case, while making preliminary statements concerning a motion filed by the defendant to return the defendant from the jail where he is being held in custody, the defendant's counsel indicated his intention of offering evi-

dence on points not alleged in his motion, viz., that the state supposedly had at least one individual at the same jail who has in the past provided information to the state's attorney and to a police inspector. This was not alleged in the motion, and the court indicated that it would not be inclined to allow counsel to offer evidence on this point without such an allegation, assuming arguendo that the point had any relevance. The defendant's counsel instead asserted that he had a right to allege it orally, which, of course, is contrary to the rules of procedure because, among other things, such a course would take opposing counsel by surprise and would place no limitation on the issues to be litigated. A hearing thus conducted would clearly be likely to become endless, amorphous, and without direction. The court also cautioned the defendant's counsel that if allegations are made, there should be some evidence to justify them. The court further reminded counsel of a situation in a different case when he had made certain unfounded allegations against the state's attorney and the court had occasion to caution him not to follow such a course again.

The court expects counsel in all cases to abide by the rule requiring good faith pleadings and good faith oral representations to the court. Whenever it appears reasonably appropriate to warn counsel that he may be, or should beware of, transgressing the bounds of this rule, as was the case here, the court will not hesitate to do so.[1] Such action by the

---

[1] The New York Times for July 4, 1974, carried a story about Professor Alan M. Dershowitz of the Harvard Law School, attorney for an Edmund A. Rosner, himself a New York lawyer, who in 1972 was convicted of bribing a detective to obtain secret documents from the United States Attorney's office. Professor Dershowitz as defense counsel in the United States District Court at New York appeared before District Judge Arnold Bauman, according to the Times, and made the oral accusation that the United States Attorney's office for the Southern District of New York "deliberately" withheld from

court is manifestly proper, and counsel can find no justification for a motion to disqualify when this is done. Such a rule places no restraint whatever upon any counsel in any case except the essential restraint implicit in honesty, fairness, candor, reasonableness, and good faith. Neither the federal nor the state constitution has yet dispensed with these qualities in the conduct of any counsel before the court. One may search forever to find a constitutional guarantee to any counsel of his right to disregard these qualities in his conduct as a member of the bar in court; like Diogenes, who sought a different purpose, his search will be in vain.

### MEMORANDUM ON THREE DEFENDANTS' MOTIONS TO RETURN TO JAIL.

One defendant has been incarcerated in jail pending trial on a variety of charges. He claims that the inconvenience to counsel in traveling the approximate eighty-five miles—one and a half hours' travel time each way—is a deprivation to him, the defendant, personally of his constitutional right to assistance of counsel. He also claims that the commissioner of correction has no adequate reason for keeping him at such distance. Two codefendants make similar claims.

The commissioner of correction testified and stated that the reason for placing the defendants where they are is security. The local jail is inadequate, based upon information that he obtained.

the United States Supreme Court information about a crime committed by a certain detective. At this point, the Times reports, Judge Bauman warned Professor Dershowitz that he would consider instituting disciplinary proceedings against him "if the deadly serious charge" was not proved. The judge is quoted as saying, "You better be ready to prove it."

Professor Dershowitz is not reported to have made any reply nor to have filed any motion to disqualify Judge Bauman in the case being presented before him seeking a new trial for Rosner.

The commissioner has an extremely broad discretion in determining where to retain prisoners pending trial. Even if there were room for a difference of opinion as to where a prisoner should be held, it is not for the court to interfere and mandate a change. There is little power that the court can or should exercise, except possibly in a most extreme and unusual case, to regulate the placement of such prisoners. The commissioner must in every instance formulate a value judgment based upon such information as he can gather to determine whether there may be a security problem and, if so, how to handle it. The court should not attempt to "second-guess" the commissioner in the absence of extraordinarily strong reasons, none of which appears in this case.

The defendants also claim a lack of due process in their transfer from the jail where they were originally detained for a few days to their present places of detention. Among other things, they object to lack of notice of the change to their counsel and lack of opportunity to be heard concerning the change. There is no requirement in the law that the commissioner of correction must notify counsel when he shifts the jail population for security reasons, as was done here. As for the claim for an adversary hearing prior to such a change, the mere statement of the claim is sufficient to establish its own absurdity. The administration of the prison system would become impossible in the face of such a requirement.

The court points out that counsel are not being deprived of the right to visit their clients at any reasonable time of the day or evening, including weekends. It may represent an inconvenience for them to travel the extra distance to the jail, but

such inconvenience must yield in the face of the necessity for adequate security precautions as determined by the commissioner.

The court can find no sound reason for issuing any order to change the places of incarceration for any of the defendants.

Motions denied.